## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Karen KRUMMEN, ET AL. | : | Case No.: 1:13-cv-193 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| vs. | : | |
| | : | PLAINTIFFS' MOTION FOR |
| CITY OF NORTH COLLEGE | : | TEMPORARY RESTRAINING |
| HILL, ET AL. | : | ORDER AND PRELIMINARY AND |
| | : | PERMANENT INJUNCTION |
| Defendants. | : | |

Pursuant to Fed. R. Civ. Pro. 65, Plaintiffs hereby move for a temporary restraining order, and preliminary and permanent injunction, enjoining Defendants from retroactively applying new term limits that were enacted in a November 2012 Charter Amendment.

## MEMORANDUM OF LAW

## I.  INTRODUCTION

This action seeks an order declaring the retroactive application of North College Hill's new term limits—enacted by a voter-approved Charter Amendment (the "Amendment") in last November's general election—as a violation of Plaintiffs' Federal Constitutional rights and the Ohio Constitution's prohibition on retroactive laws.  The action also seeks a temporary and permanent injunction enjoining Defendants, the City of North College Hill and the Hamilton County Board of Elections ("Board of Elections"), from applying the term limits retroactively against Plaintiffs, which would bar them from the ballot in this November's at-large election and all future elections.

This action seeks to maintain the *status quo* and enjoin the barring of 1) Plaintiffs Maureen Mason and Teresa Eilermann from the November 2013 North College Hill City Council ballot, 2) Plaintiffs Maureen Mason and Teresa Eilermann from initiating their campaigns for reelection to the North College Hill City Council (the "Council") by circulating nominating petitions, and 3) Plaintiffs Karen Krummen, Marcia Weaver, Erna Olafson and Al Long from exercising their First and Fourteenth Amendment rights by signing, circulating and submitting petitions to the Board of Elections to place Mason and Eilermann on the ballot, until the Court can issue a final ruling on the retroactivity of the new term limits.

## II.      ARGUMENT

### A.      Standard for Granting Preliminary Relief

While there is no rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief, *see Tate v. Frey*, 735 F.2d 986, 990 (6th Cir. 1984) (citations omitted), the Court should consider the following four factors:

1.      Whether the movant has shown a substantial likelihood of success on the merits;

2.      Whether the movant will suffer irreparable harm without the injunction;

3.      Whether the injunction will cause substantial harm to others;

4.      Whether the public interest would be served by the preliminary injunction.

*See Northeast Ohio Coalition for the Homeless v. Husted*, 696 F.3d 580, 590-91 (6th Cir. 2012).  These factors are "to be balanced and [are] not prerequisites that must be satisfied . . . they are not meant to be rigid and unbending requirements."  *McPherson v. Michigan High School Athletic Association*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).  A finding of irreparable injury "is the single most important prerequisite that the Court must

2

examine when ruling upon a motion for preliminary injunction." *Metrobanc v. Federal Home Loan Bank Bd.*, 666 F. Supp. 981, 984 (E.D. Mich. 1987).  "The probability of success that must be shown is inversely proportional to the degree of irreparable injury the plaintiffs will suffer absent an injunction." *State of Ohio ex rel Celebrezze v. N.R.C.,* 812 F.2d 288, 290 (6th Cir. 1987).

At the preliminary injunction stage, "'a plaintiff must show more than a mere possibility of success,' but need not 'prove his case in full.'" *Northeast Coalition for the Homeless,* 696 F.3d at 591 (citation omitted). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* A district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue. *See Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2002).

Plaintiffs meet this test for preliminary relief.  Their strong likelihood of success on the merits, the irreparable harm they will suffer, the balance of hardships and the public interest all strongly favor the issuance of the requested injunction.

**B.    Plaintiffs Have a Likelihood of Success on the Merits: the Retroactive Application of North College Hill's New Term Limits Violates Plaintiffs' First and Fourteenth Amendment Rights, and the Ohio Constitution's Prohibition on Retroactive Laws.**

Plaintiffs are all residents and registered voters in North College Hill, Ohio. Plaintiffs Mason and Eilermann are members of the Council, having been duly elected and served 21 and 27 consecutive years, respectively.  They both intend and desire to seek reelection in the November 2013 general election.  Plaintiffs Krummen, Long,

3

Weaver and Olafson have voted for Plaintiffs Mason and Eilermann in prior elections, intend to vote for them in the November 2013 general election, and also intend to support their candidacies throughout the 2013 campaign.

In November 2012, the voters of North College Hill approved a Charter Amendment (the "Amendment") that read as follows:

Shall ARTICLE XIII: Nominations and Elections of the Charter of the City of North College Hill be amended by adding

*Section 13.09 Setting TERM LIMITS for City Elective Offices, as follows? Upon passage of this Charter Amendment, **holders of elective office in the City of North College Hill (whether past, current or future) may not seek re-election to the same office if they will have already served a cumulative 12 years or more in that same office.** Such individuals would thus be "Term-limited" for that office. Elective Offices in North College Hill include Mayor, President of City Council, City Council Member and any other elective office that would be created in the future. Term-limited individuals for an elective office may not be appointed to fill out the unexpired term of a person leaving that same office. **Any past, present or future office holders having time remaining in an unexpired term after already serving a cumulative 12 or more years may complete their terms but not run for the same office again.** Term-limited individuals may seek election to any of the other types of elective City Government offices as long as they are not Term-limited in those offices as well. Should time in office become an issue in determining one's "Term-limited" status, that status may be confirmed by using archived City, County or any other public records. Shall the proposed charter amendment be adopted?*

(Charter Amendment attached to Verified Complaint as Exhibit A) (emphasis added).

Because Plaintiffs Mason and Eilermann have both served more than the 12-year limit, the Amendment plainly bars them from seeking an additional term on the Council for this November's election, and any election thereafter. Moreover, Plaintiffs Krummen, Long, Weaver and Olafson, pursuant to their First Amendment rights, intend to sign, circulate and submit petitions to the Board of Elections to place Mason and Eilermann on the ballot. But to do so, they must attest, under penalty of perjury, that candidates whom they nominate by signing and circulating petitions are "well qualified"

4

to serve on the North College Hill City Council. (Petition attached to Verified Complaint as Exhibit B).  Given that the Amendment renders Mason and Eilermann ineligible to serve, Krummen, Long, Weaver and Olafson cannot attest to their qualification for the ballot without incurring potential legal penalty.  In other words, they are prevented from exercising their First Amendment rights to seek out and associate with others, to advance the candidacies of those they support, and specifically place their names on the ballot.

    1. Plaintiffs Have Standing To Bring this Action, and the Dispute Comprises a Case and Controversy that Merits this Court To Exercise Jurisdiction

    Plaintiffs have standing to bring this Section 1983 claim.

    The Sixth Circuit's analysis of standing in *Miyazawa v. City of Cincinnati*, 45 F.3d 126 (6th Cir. 1995) is instructive. Miyazawa, a Cincinnati voter, challenged a voter-approved Charter amendment that imposed four two-year term limits for Cincinnati City Council.  The Court ruled that Miyazawa did not have standing to vindicate her constitutional rights because she "has merely asserted a general complaint that an unidentified candidate that she may want to vote for may not be eligible to run for that office." 45 F.3d at 127. "She has demonstrated no close relationship to, or any personal stake in, the claim made." *Id.*

    The Court then distinguished instances where standing *does exist* to allow ballot access cases.  First, standing exists in cases such as *Bullock v. Carter*, 405 U.S. 134 (1972), where "the voters/plaintiffs were persons who were seeking to become candidates but were barred therefrom under the subject statute." *Id.* at 128.  (also citing *Erum v. Cayetano*, 881 F.2d 689 (9th Cir. 1989), where the plaintiff/voter "was seeking to become a candidate but was barred by the applicable statute."). Second, standing exists in cases

where voters support a "particular candidate." *Id.* (citing *Henderson v. Fort Worth Independent School District*, 526 F.2d 286 (5th Cir. 1976). Most importantly, the court explicitly distinguished Miyazawa's lack of standing because the term limits involved there were *prospective*, from a hypothetical case of *retroactive* term limits:

> **As the effect of Issue 5 is not retroactive for persons who had already served four consecutive two-year terms when it went into effect**, *see State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections*, 67 Ohio St. 3d 597 (Ohio 1993), it would be difficult to identify a candidate presently who would be affected by this provision.

*Id.* (emphasis added).

The Court's analysis in *Miyazawa* demonstrates that Plaintiffs clearly have standing here. Indeed, this case involves the retroactive application of term limits that *Miyazawa* explicitly opined would create standing. Like *Carter* and *Erum*, Plaintiffs Mason and Eilermann are seeking to become candidates for a new term but are barred from the ballot by the Amendment. And as in *Henderson*, Plaintiffs Krummen, Weaver, Olafson and Long are voters who support identified candidates who are barred from the ballot by the Amendment.

Finally, Plaintiffs satisfy the Article III requirement of a case or controversy for this Court to exercise jurisdiction at this juncture. The Sixth Circuit's decision in *Zielasko v. State of Ohio*, 873 F.2d 957 (6th Cir. 1989) is directly on point. There, a judicial candidate challenged Ohio's mandatory retirement age for elected judges. The Court found that a case or controversy existed because the petition to place a judge on the ballot required a declaration of qualification for the office—a declaration "made under the threat of criminal penalty for 'election falsification.'" *Id.* at 959. The Court found that "the fear of some certain legal penalty may constitute an actual harm or injury

6

sufficient to save a case from dismissal where dismissal is sought on the ground that no actual case or controversy exists." *Id.* at 959.  Because the candidate in question, who was over the age limit being challenged, "would have filed a declaration of candidacy *but for* the fear of criminal penalty for election falsification, a justiciable controversy exists in this case." *Id. See also Miyazawa*, 45 F.3d at 127 (explaining that in *Zielasko*, "[w]e found that Zielasko had standing because had he personally promoted his candidacy, this would have caused him to run the risk of a criminal penalty for 'election falsification'").

The situation here is identical. The petition that Plaintiffs are required to sign and circulate to place either Mason or Eilermann on the November ballot includes an affirmation that the candidate is "well qualified" for the Council position she seeks. (Petition attached to Verified Complaint as Exhibit B).   The petition also makes clear that "whoever commits election falsification is guilty of a felony of the fifth degree."  *Id.* Because the Amendment deems Plaintiffs Mason and Eilermann *not* qualified for the North College Hill City Council, Plaintiffs and others signing and circulating petitions would assume a risk of legal penalty by attesting that they *are* qualified.  And Plaintiffs would sign and circulate the petitions *but for* this risk. As in *Zielasko*, the case is therefore jusiticiable under Article III.

2. North College Hill's Retroactive Term Limits Impose an Unconstitutional Ballot Restriction on Plaintiffs.

Plaintiffs are likely to succeed on the merits. Ballot restrictions such as the retroactive term limits imposed by the Amendment must satisfy a balancing test in order to pass federal Constitutional muster. Since there is no legitimate—even rational— government interest that justifies the retroactive application of term limits against

7

Plaintiffs, the retroactive element of the Amendment cannot withstand even the most deferential level of review.

The Supreme Court has held that laws regulating who can appear on the ballot implicate "basic constitutional rights" found in the First and Fourteenth Amendments. *Anderson v. Celebrezze*, 460 U.S. 787 n.7 (1983); *see Corrigan v. City of Newaygo*, 55 F.3d 1211, 1214 (6th Cir. 1995). In such cases, "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock*, 405 U.S. at 143. The rights implicated include "the right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of their political beliefs, to cast their votes effectively." *Anderson,* 460 U.S. at 787. *See also Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006); *Miyazawa,* 45 F.3d at 127.

Recognizing that some ballot regulations are necessary to advance important regulatory interests, the Supreme Court invokes a balancing test to determine which restrictions "serve the State's important regulatory interests" as opposed to those that impose unconstitutional burdens on voters. *Anderson*, 460 U.S. at 787. The test involves two steps. First, courts should "consider the character and magnitude of the asserted injury to rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Id.* at 789. Second, courts should "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* This includes determining "the legitimacy and strength of those interests" and weighing "the extent to which those interests make it necessary to burden the plaintiff's rights." If

the state has merely imposed "reasonable, nondiscriminatory restrictions" upon the protected rights, that is generally sufficient for them to be upheld.  *Id.* at 788.

In other words, the level of scrutiny varies on a sliding scale with the extent of the asserted injury.  When, at the low end of that scale, the law "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions."  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 788-89 n.9).  If the law places "severe" burdens on the rights of political parties, candidates or voters, "the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

The balancing test in this case weighs decisively in favor of Plaintiffs.

First, there are several related, cognizable injuries in this case.  Plaintiffs' First Amendment right to freedom of association is infringed. As the Court explained in *Anderson*, "the exclusion of candidates [can burden] voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and the candidate serves as a rallying point for like-minded citizens." *Anderson*, 460 U.S. at 787-88. *See also Kay v. Austin*, 621 F.2d 809, 811 (6th Cir. 1980) ("[B]allot access restrictions [] have a correlative effect on the right to associate in order to advance one's beliefs.")  Here, Mason and Eilermann represent a "rallying point" for Plaintiffs who share their views on important issues before the Council. The Amendment curtails that association with respect to the upcoming election, and negates Plaintiffs'

9

ability to advance their beliefs and preferences through the upcoming election.  Their

First Amendment associational rights are directly infringed.

There is also a cognizable injury to Plaintiffs' right to vote effectively.  "The

right to cast an effective vote 'is of the most fundamental significance under our

constitutional structure.'" *Libertarian Party of Ohio*, 462 F.3d at 585 (quoting *Burdick v.

Takushi*, 504 U.S. 428, 433 (1992). *See also Yick Wo v. Hopkins*, 118 U.S. 356, 370

(1886) (stating that the right to vote is a "fundamental political right" because of it is

"preservative of all rights."); *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219,

234 (6th Cir. 2011)(same).  And ballot access restrictions negate "the right of qualified

voters, regardless of their political beliefs, to cast their votes effectively." *Anderson*, 460

U.S. at 787.  *See also Kay v. Austin*, 621 F.2d 809, 811 (6th Cir. 1980) ("'By limiting the

choice available to voters, the State impairs the voters' ability to express their political

preferences.'")  (quoting *Illinois State Board of Elections v. Socialist Workers Party,*

440 U.S. 173, 184 (1979*)*). Here, Plaintiffs' and other voters' ability to vote for

candidates who represent their political preferences and beliefs, and who to them

comprise the most qualified and experienced candidates, are entirely negated.  And unlike

other ballot access cases involving deadlines for filing petitions or other ballot access

criteria, no actions by Plaintiffs, either candidates or voters, can remedy that restriction.

It is absolute.

Of course, courts have been clear that a voter does not have "an absolute right to

vote for a candidate of her choice, especially when that candidate or party has not

complied with reasonable state regulations." *Libertarian Party of Ohio*, 462 F.3d at 588.

Thus, the Sixth Circuit has upheld restrictions such as age limits (ie. mandatory

retirement), *see Zielasko*, 873 F.2d at 962, and life-time term limits, *see Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998), when the state has asserted reasonable justifications for them. This is especially true if the burden imposed is content-neutral, or does not single out a group based on arbitrary or discriminatory factors such as race, religion or gender. *See Libertarian Party of Ohio*, 462 F.3d at 588.

But in all such cases, the restriction eliminating candidates from a ballot requires at least some reasonable, and in cases where the harm is more severe, important, government interest to justify the harms that result. As the Supreme Court recently stated, under the *Anderson* test, "[h]owever slight that [a] burden may appear…, it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion County Election Bd.* 553 U.S. 181, 191 (2008) (citation omitted). For example, in the case of mandatory retirement for judges, the Sixth Circuit found that a number of justifications—creating opportunities for younger judges, creating a pool of part-time judges, and the risk of harm from "older and no longer competent judges" may cause—passed rational basis scrutiny. *Zielasko*, 873 F.2d at 961-62. And in the case of life-time term limits, *see id.*, the Court found that reducing the advantages of incumbency and encouraging new candidates comprised compelling state interests. *See Citizens for Legislative Choice*, 144 F.3d at 923-24.

In this case, even under rational basis review, there simply is no legitimate or rational justification for the injuries suffered—let alone a justification that could be deemed "important" or compelling. While Plaintiffs accept the interests recognized by the Sixth Circuit served by *prospective* term limits, the step of making those limits *retroactive* is not only not rational and arbitrary, it is an outright and intentional violation

11

of the Ohio Constitution. As in *Hunter*, where the Sixth Circuit found that a "local misapplication of state law" could not be considered a legitimate government interest, *see Hunter*, 635 F.3d at 238, an outright state constitutional violation is equally unavailing.

In *State ex rel. Mirlisena v. Hamilton County Board of Elections*, the Ohio Supreme Court struck down a nearly identical retroactive term limits provision. 67 Ohio St. 3d 597 (Ohio 1993). In *Mirlisena,* the citizens of Cincinnati had enacted a charter change that imposed four two-year term limits, and did so retroactively. The charter change was explicit: *"*consecutive terms of service on the council to which members were elected prior to December 1, 1993 shall be counted in determining eligibility for office under this section…*" Id*. at 598-99.

Through two analytical steps, the Ohio Supreme Court found the amendment to violate the Ohio Constitution's prohibition on retroactive laws, which provides: "[t]he general assembly shall have no power to pass retroactive laws." Ohio Const. Section 28, Art. II. First, the Court held that a local charter change was subject to the constitutional prohibition just as the legislature would be, since "the voters may no more violate the Constitution by enacting a ballot measure than a legislative body may do so by enacting legislation." *Mirlisena*, 67 Ohio St. 3d at 599 (quoting *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 295 (1981)). Second, the Court found that the language explicitly counting terms of service prior to 1993 to determine the limitation on an individual councilmember's future service, was "clearly an enactment which is meant to have retroactive effect. Such an enactment is proscribed by Section 28, Article II of the Constitution." *Id.* at 600.

The Amendment here is equally explicit in applying the term limit retroactively. First, it states, "holders of elective office in the City of North College Hill (whether **past**, **current** or future) may not seek re-election to the same office if they **will have already served a cumulative 12 years** or more in that same office." (Charter Amendment attached to Verified Complaint as Exhibit A).  To make the point even more clear, the Charter then reiterates: "Any **past**, **present** or future office holders having time remaining in an unexpired term **after already serving a cumulative 12 or more years** may complete their terms but not run for the same office again." *Id*. (emphasis added). There is no mistaking that the explicit intent of the Amendment is to count prior terms of service in applying the new term limit. So just as in *Mirlisena*, "the voters made the term limitation retroactive. This…they could not constitutionally do." *Id. See also City of Norton v. Richards*, 2009 Ohio 3868, p. 13 (Ohio Ct. App. 2009) ("[W]hen an amendment attempts to apply to an election held before the amendment's effective date, it is retroactive in nature.")

To summarize, under the *Anderson* balancing test, the retroactive application of the Amendment imposes harms by infringing on: 1) Plaintiffs' right to associate with one another to advance their political views through the November election, and 2) Plaintiffs' right to cast an effective vote for particular candidates who represent their views and preferences.  While this harm is not as severe as in the most restrictive ballot access cases, there are distinct, cognizable injuries nonetheless.

But unlike other cases where such harms have been justified by an important government interest, there simply is no justification that amounts even to a rational basis in this case. Indeed, the attempt to apply the limits retroactively violates Ohio's

Constitution, so there simply is no interest that can be deemed legitimate or rational.  *See Hunter*, 635 F.3d at 238. Defendant North College Hill therefore falls woefully short of satisfying the *Anderson* balancing test, and the retroactive application of term limits cannot stand.

3. North College Hill's Retroactive Term Limit Violates the Equal Protection Clause

For similar reasons, Plaintiffs also assert that their Equal Protection rights under the U.S. Constitution have been violated by this provision.

The Sixth Circuit, in *Corrigan v. City of Newaygo*, 55 F.3d 1211 (1995), explains that under the Equal Protection Clause, plaintiffs "have a right not to be excluded arbitrarily by the town from appearing on the ballot." *Id*. at 1216. If a city's "ballot restriction 'rests on grounds wholly irrelevant to the achievement of a valid state objective' then the ordinance must be struck down under rationality review.'" *Id.* (quoting *Turner v. Fouche*, 396 U.S. 346, 362 (1970)).  This is true even if the plaintiffs cannot assert any other independent fundamental interest. *See id. See also Hunter*, 635 F.3d at 219 n.16 ("discriminatory treatment must be justifiable").

Here, as argued *supra*, there is no valid and legitimate objective for the retroactive application of term limits to Plaintiffs.  The objective is not only *not* rational, it is a violation of the State's constitution.  It therefore cannot withstand even rational basis review, and violates Plaintiffs' Equal Protection rights accordingly.  *See Hunter*, 635 F.3d 219 (finding that misapplication of state law did not constitute legitimate government interest to justify disparate treatment of voters).

4.  The Retroactive Application of Term Limits Violates Ohio's Constitution.

14

Under Ohio law, this case is controlled by the Ohio Supreme Court's decision in *Mirlisena*.  The voters approved language in this case that is explicit in its intention to apply the new term limits retroactively, facts identical facts to the *Mirlisena* case. "This…they could not constitutionally do." *Mirlisena*, 67 Ohio St. 3d at 600.

**C.     Plaintiffs Will Experience Irreparable Harm**

Without action by this court, there is no adequate remedy at law that would enjoin Defendant from applying the Amendment retroactively and vindicating Plaintiffs' rights. Indeed, the Ohio Supreme Court has ruled that other potential avenues for this claim, such as seeking a writ of mandamus, will not succeed because Section 1983 relief is available to Plaintiffs.  *See State ex rel. Mackey v. Blackwell*, 106 Ohio St. 3d 261, 264-65 (2005) (rejecting request for mandamus because Section 1983 provided adequate remedy).  And even asking Plaintiffs to circulate petitions at this juncture in order file a mandamus or other action puts them in the untenable position of attesting to something they know not to be true. Only prompt action, at this juncture, by this Court ordering declaratory and injunctive relief will serve the public interest.

**D.     The Balance of Hardships and the Public Interest Favor Issuance of an Injunction**

The Defendants will not be harmed by the issuance of an injunction.   Allowing Plaintiffs to move forward on their campaigns should not impact Defendants in the least in the coming months. Indeed, the speedier this ruling clears up this issue, the more quickly Defendants and the citizens who reside within North College Hill can move forward with a robust, clear and fair election process.

999998.00000/50477342v.1

The Plaintiffs, on the other hand, will be severely harmed if the injunction is denied.  Putting an end to the uncertainty surrounding the Amendment is both critical to initiating the petition process necessary to get on the ballot, as well as allowing for a fair election.  The *Mirlisena* case is instructive: the litigation process was long and drawn out, with a decision allowing Mirlisena to file his petitions coming very late in the campaign (October 7) that arguably impacted the outcome of the election itself.  Indeed, Mirlisena ultimately lost his campaign even though he won his legal challenge at the eleventh hour.

The public interest is equally benefited by a ruling that upholds the clear principle that in Ohio, officials and their supporters cannot be made subject to retroactive term limits that undermine basic federal and state Constitutional rights.  *See Hunter*, 635 F.3d at 234 ("Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy.")(citation omitted).

### III.    CONCLUSION

This Court should declare that the retroactive application of term limits in North College Hill violates Plaintiffs' federal rights under the First and Fourteenth Amendments, and violates the Ohio Constitution's prohibition on retroactive laws.  Additionally, this Court should issue a preliminary and permanent injunction enjoining Defendants from barring Plaintiffs Mason and Eilermann from the North College Hill ballot due to the retroactive application of the new term limits.

Respectfully submitted,

/s/ David A. Pepper
David A. Pepper  (#0071739)
Trial Attorney for the Plaintiffs
BLANK ROME
Nathaniel R. Jones (#0026866)
Lori Nuckolls (#0069386)

16

1700 PNC Center
201 East Fifth St.
Cincinnati, OH 45202
Phone:  513.362.8700
Fax:  513.362.8787
dpepper@blankrome.com
jones-n@blankrome.com
Nuckolls@blankrome.com

17

## CERTIFICATE OF SERVICE

I hereby certify that putative counsel for Defendants was served with a copy of

this Motion by mail on March 21, 2013:


William Deters
Law Director, North College Hill
1714 West Galbraith Rd.
North College Hill, OH 45239

David Stevenson
Hamilton County Prosecutor's Office
230 E. Ninth Street Suite 4000
Cincinnati, Ohio 45202


/s/ David A. Pepper

David Pepper

Attorney for the Plaintiffs

18