# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **KAREN KRUMMEN,** *et al.*, | Case No. 1:13-CV-193 |
| **Plaintiffs,** | Chief Judge Dlott |
| v. | |
| **CITY OF NORTH COLLEGE HILL,** *et al.*, | |
| **Defendants.** | |
| **SUSAN WIETLISBACH,** and **PATRICK HARTZEL,** and **NICHOLAS LINK,** and **NICHOLAS WIETLISBACH,** | **MOTION OF PROPOSED INTERVENOR'S FOR LEAVE TO INTERVENE** |
| **Intervening Plaintiffs,** | |
| v. | |
| **CITY OF NORTH COLLEGE HILL,** *et al.*, | |
| **Defendants.** | |

Come now Susan Wietlisbach, Patrick Hartzel, Nicholas Link and Nicholas Wietlisbach and hereby move, individually and collectively, that they be granted leave to intervene herein and to be aligned as plaintiffs so as to affirm the constitutional validity of the challenged charter provision and the legal obligation of the Hamilton County Board of Elections to not place on the ballot as a candidate for city council in the City of North College Hill any individual who does

not satisfy, *inter alia*, the requirements of the city charter.  A proposed intervening complaint is attached hereto.

In addition to supporting the charter amendment at issue herein, Ms. Wietlisbach has also declared her interest and intent in running for election to the city council of the City of North College Hill; and Mr. Hartzel, who is currently a member of the city council and, thus, is already subject to the provisions of the challenged charter amendment, has already declared his intent to seek re-election this coming November.  As such, both Ms. Wietlisbach and Mr. Hartzel will be directly impacted by the disposition of the validity *vel non* of the charter amendment at issue, including affecting the exercise of their freedom of speech and association during the course of said forthcoming election, as well as such rights of their supporters.  For Plaintiffs Teresa Eilermann and Maureen Mason are also current members of the city council who apparently have also declared their intention to run for re-election this November.  (Complaint ¶¶4&5.) Thus, Ms. Wietlisbach and Mr. Hartzel are and will be directly impacted by the viability *vel non* of the challenged charter provision, especially in terms of defining the field of candidates for election in the forthcoming city council election with whom they must compete for the support of the voters (and, as such, the number of votes one must receive in order to be elected to city council).

Additionally, Messrs. Hartzel, Link and Wietlisbach were the three individuals specifically designated on the face of the initiative petition, pursuant to R.C. 731.34, as the committee to represent the petitioners in support of the challenged charter amendment.  Under Ohio law, such committee is specifically recognized as having "certain duties and rights" relative to the initiative effort that are separate and distinct from the general public.  *Russell v. Linton*, 115 N.E.2d 429 (Cuyahoga Cty C.P. 1953).  For example, in Ohio, the individuals designated on

the face of the initiative petition as the committee to represent the petitioners under R.C. 731.34 are afforded the power to withdraw the petition so that no initiative or referendum election is held; no other person or signatory on the petition has such power and authority. Furthermore, in Ohio, the individuals designated on the face of the initiative petition as the committee to represent the petitioners under R.C. 731.34 have been granted leave to intervene into an action which the "to ensure that the initiated law becomes effective." *State ex rel. Badgett v. Mullen*, 177 Ohio App.3d 27, 893 N.E.2d 870, 2008-Ohio-2373 ¶6.

In light of the acknowledged on-going efforts between the Plaintiffs and Defendants to settle this case at its infancy through an agreed entry declaring and enjoining the operation of the challenged charter provision, it is critical that an independent party supportive of the charter amendment be allowed to participate in this action in order to defend its constitutionality. Stated otherwise, with the original parties pursuing, at the infancy of this case, a coöperative effort to stifle the will of the voters of North College Hill, not only is a full and sufficient legal defense to the charter provision lacking, but another critical *sine qua non* matter threatens to be ignored, *viz.*, whether this Court even possesses subject matter jurisdiction to enter and effectuate any agreement to enjoin the operation of the charter provision.[1]

---

[1] Though it can be developed more so in subsequent briefing, it is clear that the claims being asserted herein are neither ripe for adjudication such that this Court lacks subject matter jurisdiction under Article III of the United States Constitution. At present no adverse state action has been taken against any individual who desires to seek re-election to the city council. For no candidate petition has been tendered to the Hamilton County Board of Election and, thus, the Board of Elections has not refused to place any candidate's name on the ballot. At this stage, no putative candidate for city council has even satisfied the other requirements of state law and the city charter such that the challenged provision of the city charter is the only obstacle precluding one's candidacy. Until such other legal requirements have been met and satisfied, a challenge to the charter provision is premature and not ripe, and this Court lacks subject matter jurisdiction.

**ARGUMENT**

**I.      Proposed Intervenors Are Entitled To Intervene as of Right**

The Federal Rules of Civil Procedure provide that, upon timely application, an applicant shall be permitted to intervene as of right:

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Thus, the Court must consider four elements in order to determine whether the proposed intervenor is entitled to intervene as of right: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, (4) inadequate representation of that interest by parties already before the court." *Michigan AFL-CIO v. Miller,* 103 F.3d 1240, 1245 (6th Cir. 1997); *United States* v. *Tennessee*, 260 F.3d 587, 591-592 (6th Cir. 2001).

However, "[i]n the Sixth Circuit, the standard for intervention as a matter of right is lenient." *Eastern Shawnee Tribe of Oklahoma v. State*, Case No. 3:05CV7267 (N.D. Ohio Sept. 19, 2006). For "Rule 24 is broadly construed in favor of potential intervenors." *Purnell v. City of Akron,* 925 F.2d 941, 950 (6th Cir.1991). Thus, "a party seeking to intervene need not possess the standing necessary to initiate a lawsuit." *Id.* at 948. For an intervenor need not have a "specific legal or equitable interest" to qualify for intervention under Rule 24(a)(2). *Id.* Instead, Rule 24 "is broadly construed in favor of potential intervenors." *Id.* at 950.

**A. Proposed Intervenors Have Timely Filed This Motion.**

The timeliness is to be determined from all the circumstances, including:

(1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his or her interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Grubbs v. Norris*, 870 F.2d 343, 345–46 (6th Cir. 1989). It should be beyond cavil that the present motion to intervene has been made in a timely manner. This action was filed less than one month ago and the Defendants' answer is not even due. Furthermore, recent revelations confirmed on-going discussions between the present parties to stipulate to the unconstitutionality of the challenged charter provision, without any meaningful effort to defend the voter-adopted initiative. And finally, no party will be prejudiced by allowing intervention at this time; for not only is this case in its infancy, but any election which would arguably be impacted is over 6 months away. Thus, it is clear that the present motion to intervene has been made within a timely period.

**B. Proposed Intervenors Have a Significantly Protectable Interest In The Subject Matter of This Lawsuit.**

Despite the standard for the standard for intervention as a matter of right being lenient, the Sixth Circuit has concededly been hesitant of adopting a *per se* rule that allows sponsors of a ballot initiative to have a sufficient interest in the subject matter of the litigation to intervene as of right pursuant to Fed. R. Civ. P. 24(a). This is in direct conflict with the Ninth Circuit which has adopted "a virtual *per se* rule that the sponsors of a ballot initiative have a sufficient interest in the subject matter of the litigation to intervene pursuant to Fed. R. Civ. P. 24(a)." *Yniguez v.*

*State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see also Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (ruling that a public-interest group and chief petitioner who supported "an initiative [had] a 'significant protectable interest' in defending the legality of the measure").[2]

However, the Sixth Circuit's current position is neither a *per se* allowance of intervention as of right nor a *per se* prohibition on such intervention of right when dealing with challenges to matters adopted by the voters through the initiative process. Instead, careful consideration must be given the issue being challenged and the proposed intervenors' relationship thereto. In *Northland Family Planning Clinic, Inc. v. Cox,* 487 F.3d 323 (6th Cir. 2007), the Sixth Circuit affirmed the denial of the effort of a public interest group to intervene to defend the constitutionality of a state law adopted by the state legislature. Focusing upon the fact that the public interest group at issue in *Northland Family Planning* "was created and continues to exist for the purpose of passing and upholding the Act, its legal interest can be said to be limited to the passage of the Act rather than the state's subsequent implementation and enforcement of it." *Id.* at 345. Thus, the Sixth Circuit concluded that "public interest groups who are regulated by the new law, or, similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted." *Id.* at 345.

While *Northland Family Planning* dealt with efforts to intervene in order to defend the constitutionality of a law adopted by a state legislature, the Sixth Circuit addressed intervention by a public interest group to defend the constitutionality of its initiative effort which was adopted by the voters in *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir.

---

[2] Movants believe that, especially in light of the recent trend of governmental officials refusing to defend the constitutionality of initiative-adopted measure, the Sixth Circuit may need to reviit and clarify the issue, at least as it relates to measures adopted by the voters through initiative efforts versus measures adopted by a legislative body. However, movants believe the present situation is distinguishable and/or meets the criteria for intervention as of right under current Sixth Circuit precedent.

2007). Failing to distinguish between statutes or ordinances adopted by legislative bodies versus via initiative, the Sixth Circuit extended *Northland Family Planning* to all such efforts, claiming that "our precedent requires a contrary conclusion" to that reached by the Ninth Circuit. *Id.* at 780; *but see id.* at 784-88 (Kennedy, J., concurring in part and dissenting in part)(recognizing that "measures approved by the voting public in a general election are different from legislative acts," declared that "I would hold that sponsors of voter initiatives may intervene as of right to defend the measures they sponsored"). Thus, the Sixth Circuit declared that its rulings "is not to say that all organizations that advocate for the passage of a law lack a substantial legal interest in a suit challenging the government's subsequent enforcement of that law. Indeed, we have held that where a group is 'regulated by the new law, or, similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted.' Where, however, an organization has only a general ideological interest in the lawsuit – like seeing that the government zealously enforces some piece of legislation that the organization supports – and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial." *Id.* at 782 (quoting *Northland Family Planning*, 487 F.3d at 345 and internal citations omitted).

In the present case, though, the proposed intervenors (in their capacity as the committee specifically designated pursuant to R.C. 731.34 and in their individual right) have a sufficient protectable interest to allow them to intervene as of right. For unlike the situations in *Northland Family Planning* or *Coalition to Defend Affirmative Action*, the committee supportive of the charter amendment possesses a special and unique status under state law. The decisions in *Northland Family Planning* and *Coalition to Defend Affirmative Action* did not consider the committee's status under state law. Further, in those two cases, the challenge statute did not

operate against the committee; in contrast, the challenged charter amendment will directly operate against and impact the proposed intervenors. For *Northland Family Planning* involved a challenge to a state law concerning abortion methods; and *Coalition to Defend Affirmative Action* involved a challenge to a state constitutional provision that outlaw sex-based and race-based preferences in public education, public employment, and public contracting. Yet neither the organizations nor the members in those two cases were directly affected by the challenged provisions; they simply sought to defend the constitutionality of the challenged provision. In contrast, the charter provision being challenged herein does and will directly affect the members of the committee designated by state law to support the initiative effort. For as residents and electors in North College Hill, the validity *vel non* of the charter amendment directly impacts their ability to fully engage in speech (through the casting of their vote) and the ability to associate with others (to support candidates).

Similarly, though even more directly, disposition of this case will directly impact Ms. Wietlisbach and Mr. Hartzel in their efforts to be elected this coming November to city council. For, just like Plaintiffs Teresa Eilermann and Maureen Mason, Ms. Wietlisbach and Mr. Hartzel have also declared their interest and intent in running for election to the city council of the City of North College Hill. And as the charter amendment would preclude Ms. Eilermann and Ms. Mason from seeking re-election, the validity *vel non* of the charter amendment at issue herein will directly impact Ms. Wietlisbach and Mr. Hartzel, and their supporters in the exercise of their freedom of speech and association during the course of said election. For the number of votes that any candidate for city council must receive in order to be elected is dependent upon the number of individuals seeking election in that field race; thus, the disposition of the present challenge to the charter provision will directly impact the campaign efforts of Ms. Wietlisback

and Mr. Hartzel (as well as other candidates for city council). Such a situation is comparable to the one individual who was granted leave by the district court to intervene in the case underlying *Coalition to Defend Affirmative Action*, the case involving the challenge to the state constitutional provision prohibiting sex-based and race-based preferences. In that case, the District Court concluded that a white male with an application under consideration by the University of Michigan had a sufficient tangible interest in the challenge to the state constitutional provisions to warrant intervention because, "if the present plaintiffs are successful in obtaining a ruling that the constitutional amendment is invalid, [that individual's] chances of gaining admission to the University of Michigan law school may be diminished." *Id.* at 375. Similarly, if, notwithstanding the vote of over 65% of the electors in the City of North College Hill to impose term limits, this Court should declare that the City of North College Hill and the Hamilton County Board of Elections cannot preclude Ms. Eilermann and Ms. Mason from running once again for city council, then the chances of any other candidate of being elected will be diminished. As such, Ms. Wietlisbach and Mr. Hartzel (or any other candidate seeking election to city council this November, other than Ms. Eilermann and Ms. Mason), as well as the supporters of such candidates, will be directly impacted by the direct impact of the validity *vel non* of the charter amendment. Thus, Ms. Wietlisbach and Mr. Hartzel have a sufficient interest to give them the right to intervene herein.

### C. This Court's Ruling Might Impair Proposed Intervenors' Significantly Protectable Interest.

As for the third factor to consider with respect to intervention of right, *i.e.*, the prospect of impairment of the applicant's ability to protect that interest in the absence of intervention, the burden to show that a movant's interest may be impaired absent the intervention is "minimal" –

the proposed intervenor need only show that impairment is possible. *Michigan State AFL-CIO* v. *Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997). And the Sixth Circuit has noted that potential negative *stare decisis* effects can be the basis for impairment. *Northeast Ohio Coal. for the Homeless v. Blackwell,* 467 F.3d 999, 1008 (6th Cir. 2006).

Instead of allowing for the normal candidate petition process to proceed under state law – whereby a voter can challenge a putative candidate's candidacy or petition, and the matter is resolved by the board of election and subject then to judicial review – Ms. Eilermann and Ms. Mason (and their supporters) have sought to preëmpt the normal state-provided procedure and, instead, seek to have this Court dictate a specific course of action for the Hamilton County Board of Elections even in advance of any petition being filed with the Board.[3] While Proposed Intervenors believe the lack of any petition being filed with or any action by the Board of Elections to exclude either Ms. Eilermann and Ms. Mason from the ballot demonstrates how this action is premature and not ripe for judicial review, in the event this Court proceeds to consider the matter and rules in favor of the Plaintiffs, then there exists the prospect that such a determination will have a preclusive effect upon the Proposed Intervenors or other individuals who might seek, pursuant to the state-provided procedures, to challenge the candidacy of either Ms. Eilermann and Ms. Mason (presuming they satisfy and meet all the other legal requirements to be candidates) pursuant to such state-law procedures. Furthermore, to allow a disposition concerning the validity of the charter amendment at this stage, would potentially operate to preclude any consideration of a protest being filed with the Hamilton County Board of Elections pursuant to R.C. 3501.39. Proposed Intervenors (as well as their supporters in the forthcoming election) have the right to file objections under state law challenging the candidacy or petitions

---

[3] The state-law process for challenging a candidate's petition or candidacy is provided for in R.C. 3501.39.

of Ms. Eilermann and Ms. Mason. But without any person defending constitutionality of the challenged charter amendment, the right (let alone interest) of the Proposed Intervenors (as well as their supporters in the forthcoming election) to have such objections considered will be snuffed out before they could even arise. Thus, the interest in the ability to file objections to a candidate's petition or candidacy has the potential of being serious infringed or negated.

### D. The Existing Parties Will Not Adequately Represent Proposed Intervenors' Interests.

Finally, with respect to the adequacy of representation of the present parties, the Supreme Court has stated that the requirement of Rule 24(a) "is satisfied if the applicant shows that representation of his interest 'may' be inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972) (citations omitted). And the Sixth Circuit has expressly noted that a proposed intervenor need not show that representation will in fact be inadequate. *Mich. State AFL-CIO,* 103 F.3d at 1247; *Ne. Ohio Coal. for the Homeless,* 467 F.3d at 1008 ("it is sufficient to prove that representation *may* be inadequate"). Among other things, the possible failure of existing parties to make all of the prospective intervenor's arguments may be sufficient to show inadequate representation. *Mich. State AFL-CIO,* 103 F.3d at 1247.

In this case, during the telephone conference with the Court on April 8, counsel for the City of North College Hill indicated a willingness to proceed along the lines of stipulating to the unconstitutionality (at least under state law) of the challenged charter amendment. But there exists an inherent conflict of interest whereby what is being challenged – a term limits charter amendment – directly impacts and restricts the individuals who, in turn, can dictate the defense of this action, including a settlement to vitiate the will of the voters who adopted the term limits

provision. The Ninth Circuit has found that intervention is warranted where there is the indication that the defendant government official desires the same legal outcome sought by the plaintiff. As it explained:

> as appears to be true in this case, the government may be less than enthusiastic about the enforcement of a measure adopted by ballot initiative; for better or worse, the people generally resort to a ballot initiative precisely because they do not believe that the ordinary processes of representative government are sufficiently sensitive to the popular will with respect to a particular subject. While the people may not always be able to count on their elected representatives to support fully and fairly a provision enacted by ballot initiative, they can invariably depend on its sponsors to do so.

*Yniguez*, 939 F.2d at 733; *accord Bates v. Jones*, 904 F.Supp. 1080, 1087 (N.D. Cal. 1995)("an official sponsor of a ballot initiative may be considered to add an element not covered by the government in defending the validity of the initiative in that the very act of resorting to a ballot initiative indicates a rift between the initiative's proponents and voters and their elected officials on the issue that underlies the initiative").

In sum, Proposed Intervenors satisfy all the requirements for intervention as of right. This Court should grant their request to intervene.

## II. Proposed Intervenors Have Satisfied Requirements for Permissive Intervention

Even if the Court should conclude that Proposed Intervenors satisfy the requirements to intervene as of right, they should still be granted permissive intervention. Fed. R. Civ. P. 24(b)(1)(B) provides for permissive intervention: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Thus, "[t]o intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact. Once these two requirements are established, the district court must then balance

- 13 -

undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005).

As set forth above, the present motion is made in a timely manner, *i.e.*, at the infancy of the case before any responsive pleading has even been filed, let alone before the Rule 26(f) conference and ensuing discovery.  Additionally, as the proposed complaint demonstrates, the constitutionality of the charter amendment imposing term limits on elected officials in the City of North College Hill is the common and key legal question throughout this case.  Additionally, the factors developed above in discussing intervention as of right further militate in favor of this Court granting permissive intervention – from the effect that the disposition of the issues raised herein will have on the forthcoming election to whether any elector will have their state-law right to file objections to a candidate's petition or candidacy estopped before it even arises.  In order that a full and complete argument is presented to the Court for a full and fair disposition of the legal issue, permissive intervention should be granted.

**CONCLUSION**

Proposed Intervenors have significantly protectable interests in the charter amendment imposing term limits on elected officials in the City of North College Hill.  It is critical that the legal issues are fully and thoroughly briefed before ultimate disposition by this Court.  Accordingly, one or more of the movants should be granted leave to intervene.

- 14 -

                                  Respectfully submitted,

                                 /s/ Curt C. Hartman
                                Curt C. Hartman
                                The Law Firm of Curt C. Hartman
                                3749 Fox Point Court
                                Amelia, Ohio 45102
                                (513) 752-8800
                                *hartmanlawfirm@fuse.net*

                                Christopher P. Finney
                                Finney, Stagnaro, Saba & Patterson LLP
                                2623 Erie Avenue
                                Cincinnati, Ohio 45208
                                (513) 533-2980

                                *Counsel for Intervening Plaintiffs*

## CERTIFICATE OF SERVICE

     I certify that a copy of the foregoing will be served upon all counsel of record via the Court's ECF system on the date of filing.

                                 /s/ Curt C. Hartman