UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Karen KRUMMEN, ET AL. | : | Case No.: 1:13-cv-193 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| vs. | : | |
| | : | PLAINTIFFS' RESPONSE IN |
| CITY OF NORTH COLLEGE | : | OPPOSITION TO INTERVENORS' |
| HILL, ET AL. | : | COMPLAINT AND MOTION TO |
| | : | INTERVENE |
| Defendants. | : | |

Plaintiffs Krummen et al. oppose Proposed Intervenors' Complaint ("Complaint") and Motion of Proposed Intervenors for Leave to Intervene ("Motion to Intervene"). In their Complaint and Motion to Intervene, Proposed Intervenors have cited the correct cases, but drawn all the wrong conclusions. The Sixth Circuit's precedent governing their attempt to intervene here makes clear that intervention is not appropriate and should not be granted.

### ARGUMENT

**I. Proposed Intervenors Should Be Denied Intervention as of Right Because They Have No Substantial Legal Interest in the Subject Matter of the Case.**

Under Fed. R. Civ. P. 24(a)(2), a proposed intervenor must establish four elements:

(1) that the motion to intervene was timely;

(2) that the intervenor has a substantial legal interest in the subject matter of the case;

(3) that its ability to protect that interest may be impaired in the absence of intervention; and

(4) that the parties already before the court may not adequately represent its interest.

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007). A proposed intervenor "must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

While Proposed Intervenors satisfied the first element by filing their Motion to Intervene timely, they fail to meet any of the other three standards. Most importantly, Proposed Intervenors have no substantial legal interest in the case's subject matter.

While their argument is somewhat muddled, they appear to make two assertions. First, they suggest that a legal interest arises because three of the proposed intervenors— Patrick Hartzel, Nicholas Link and Nicholas Wietlisbach— comprised the committee that filed the initiative petition for the 2012 Charter Amendment. Complaint, at 3. The fourth, Susan Wietlisbach, was a "supporter" of the charter amendment. *Id.* In their Complaint, Proposed Intervenors suggest that as committee members, they have "certain duties and rights" under Ohio law, and that those duties and rights somehow grant them the right to intervene here. Complaint, at 2-3. Motion to Intervene at 7 ("the committee supportive of the charter amendment possesses a special and unique status under state law").

But the Sixth Circuit has explicitly held the opposite in a line of cases addressing this precise question. First, in *Providence Baptist Church v. Hillandale Committee, Ltd.*, 425 F.3d 309 (2005), Euclid's City Council enacted ordinances rezoning a site to allow

2

for a new church location. The proposed intervenor, Hillandale Committee, mounted a referendum effort to repeal these ordinances, and ultimately succeeded at the polls. When Providence Baptist Church brought suit challenging the new zoning code's prohibition on their site as unconstitutional, Hillandale Committee sought to intervene. In the meantime, Providence Baptist Church and Euclid agreed on a consent judgment that the code was indeed unconstitutional. *Id.* at 312-13.

Neither the district court nor the Court of Appeals allowed the Hillandale Committee to intervene. "[A]ny interest [the committee] had in this case sufficient to permit intervention ended when the election took place," *Id.* at 316-17.

> Any substantial legal interest held by "the duly authorized committee for a referendum which circulated the referendum petitions" was terminated when the referendum was held and the results certified. Hillandale Committee's alleged advocacy in getting the zoning ordinance on the November 2004 ballot does not suffice to make it a "real party in interest in the transaction which is the subject of the proceeding" - the negotiated settlement between Providence and Euclid. *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997). Rather, its interest in the negotiated settlement is "so generalized it will not support a claim for intervention of right." *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982).

*Id.* The Court explained that the cases cited by the Hillandale Committee where intervention had been permitted all involved *challenges to the election process itself*, where a committee in existence to advance a petition or referendum in that election clearly had a real legal interest. *See id.* at 17. But once the election has taken place, that interest no longer exists. *See id.*

*Northland Family Planning Clinic, Inc.* applied the same principle. There, a group called Standing Together to Stop Partial Birth Abortion ("STTOP") attempted to intervene to defend the constitutionality of a "partial birth abortion" law enacted by the Michigan legislature following a SSTOP petition drive. The Court relied on *Providence*

3

*Baptist Church* to deny intervention. Because "SSTOP was created and continues to exist for the purpose of passing and upholding the Act, its legal interest can be said to be limited to the passage of the Act rather than the state's subsequent implementation and enforcement of it." 487 F.3d at 345.

> After the Act's passage [] STTOP's interest in the enforcement of the statute is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written. As things now stand, STTOP's interest in this case simply pertains to the enforceability of the statute in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right.

*Id.* at 346. As in *Providence Baptist Church*, the Court explained that the cases relied upon by SSTOP to justify intervention "all involved challenges by a public interest group to the *procedure* required to pass a particular rule, as opposed to the government's subsequent enforcement of the rule after its enactment." *Id.* at 345.

Finally, the Sixth Circuit rejected a similar attempt to intervene in *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007). The Court concluded that the proposed intervenor in that case, Michigan Civil Rights Initiative Committee ("MCRI"), "was created and continues to exist for the purpose of passing and upholding Proposal 2." *Id.* at 781. As in *Providence Baptist Church* and *Northland Family Planning*, the Court held that a group's status in having led a ballot initiative "is insufficient to provide them with a substantial legal interest in a lawsuit challenging the validity of those portions of Michigan's constitution amended by Proposal 2." *Id.*

In all three cases, the Court justified denying intervention in part because once a measure has passed, its enforcement "is entrusted for the most part to the government." *Northland Family Planning*, 487 F.3d at 345. The state bears the responsibility "in enforcing and defending [the measure] as written." *Id.* at 346. In that circumstance,

4

"concerns for state autonomy . . . deny private individuals the right to compel a state to enforce its laws." *Providence Baptist Church*, 425 F.3d at 317 (quoting *Diamond v. Charles*, 476 U.S. 54, 65 (1986)).

Thus, to the extent Proposed Intervenors are attempting to intervene because they comprise the committee that advanced the Charter change of 2012, *see* Motion to Intervene at 7-8, this clear precedent controls. The committee here "was created and continues to exist for the purpose of passing and upholding [the proposal]." *Coalition to Defend Affirmative Action*, 501 F.3d at 781. They are not challenging the procedure or validity of the election itself. See *id.* at 316-17. And "[a]ny substantial legal interest held by 'the duly authorized committee for a referendum which circulated the referendum petitions' was terminated when the referendum was held and the results certified." *Providence Baptist Church*, 425 U.S. at 316.

Proposed Intervenors attempt an end run around this precedent via a second argument: they maintain that two of the proposed intervenors are directly impacted by this lawsuit because they desire to be candidates for this November's North College Hill City Council election. One, Patrick Hartzel, is an incumbent councilmember seeking reelection. *See* Complaint at 3. And they claim that Susan Wietlisbach has indicated an interest in running for Council. *See id.* According to their Motion to Intervene, the outcome of this litigation "will directly impact Ms. Wietlisbach and Mr. Hartzel, and their supporters in the exercise of their freedom of speech and association during the course of said election." Motion to Intervene at 8.

This argument is deeply flawed. First, the asserted "interest" is not at all like cases where the Sixth Circuit has considered intervention appropriate. In *Northland Family*

*Planning*, the Court explained that cases where public interest groups might properly intervene involve those where such groups are 1) not simply created for one specific ballot initiative, but are a "repeat player" in the litigation taking place, 2) are "regulated" by the legislation that is being challenged, 3) and/or "whose members are effected by the law." 487 F.3d at 345. The committee here is neither a "repeat player" nor is it regulated by the Charter amendment in question. Only a single member of the committee happens to be an incumbent councilmember, and that has nothing to do with his status as a committee member. And Susan Wietlisbach was not a member of the committee at all. So the committee itself meets none of the Court's criteria.

Boiled down to its essentials, the secondary argument has nothing to do with the committee, but only relates to Hartzel and Susan Wietlisbach as individual candidates. But counter to their assertions, both individuals, along with their supporters, can exercise their full First Amendment rights of expression and association by running for the North College Hill City Council. Nothing in this litigation or its potential outcomes hinders them from gathering petitions, placing their names on the ballot, engaging voters as candidates, or running full-throated campaigns through the summer and fall. And the voters will ultimately have their say on those candidacies come November. The entire argument appears to be that of two candidates for office who simply desire to have fewer opponents in the upcoming election. But when those two candidates and their supporters can and will enjoy the full opportunity to exercise their First Amendment rights throughout the campaign, eliminating two competitors is simply not a "protectable legal interest" justifying intervention.

Finally, their entire argument proves far too much. Their logic would support the intervention of any number of North College Hill residents who might at some point desire to run for Council, or residents who might support those unnamed candidates, as they expressly concede. *See* Motion to Intervene at 9 ("As such, Ms. Wietlisbach and Mr. Hartzel (or *any other candidate seeking election to city council* this November…) as well as *the supporters of such candidates*, will be directly impacted by the direct impact of the validity *vel non* of the charter amendment.")(emphasis added). Indeed, Proposed Intervenors suggest that they should have a right to intervene simply because "as residents and electors in North College Hill, the validity *vel non* of the charter amendment directly impacts their ability to fully engage in speech (through the casting of their vote) and the ability to associate with others (to support candidates.)" Motion to Intervene at 8. Under their logic, virtually anyone in the City has a right to intervene! But as the Sixth Circuit has said, "[a]n 'interest so generalized will not support a claim for intervention as of right.'" *Coalition to Defend Affirmative Action*, 501 F.3d at 782 (citation omitted).

Finally, allowing potential candidates and residents to intervene on such flimsy grounds would accomplish exactly what the Sixth Circuit warned when it said: "[w]ithout these sorts of limitations on the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Northland Family Planning*, 487 F.3d at 346. That over-politicization would clearly occur if intervention were permitted here.

In the end, none of Proposed Intervenors' arguments establishes a "substantial legal interest" in the subject matter of the case.

7

Proposed Intervenors' arguments regarding the third and fourth prong of the four-part test are equally deficient.  Relative to the third prong, as stated above, nothing this court decides will impair the ability of Proposed Intervenors to exercise their full First Amendment rights by running for the Council this November and/or supporting candidates that do.  Indeed, they don't even argue that to be the case.  Their argument mainly appears to be that the action before this Court is not ripe.  Plaintiffs rely on their initial Motion's discussion of standing and Art. III to counter that argument. *See* Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief, at 5-7.

As for the fourth prong, Proposed Intervenors misunderstand the precedent and contradict their own prior arguments when they assert that the City of North College Hill has "an inherent conflict of interest" in this matter.  Motion to Intervene at 11.  To the contrary, as the cases cited above make clear, once passed, the enforcement of a charter change such as this "is entrusted for the most part to the government" to enforce. *Northland Family Planning*, 487 F.3d at 345. *See id.   Providence Baptist Church*, 425 F.3d at 317 ("[C]oncerns for state autonomy . . . deny private individuals the right to compel a state to enforce its laws.") (quoting *Diamond v. Charles*, 476 U.S. 54, 65 (1986)). North College Hill administrators and Councilmembers[1] are fully capable of and legally obligated to defend this matter based on the advice of counsel and on the best interests of the City.

Ironically, Proposed Intervenors' own prior arguments undermine their assertion that an "inherent conflict of interest" incentivizes North College Hill to agree that the

---

[1] Plaintiffs Mason and Eilermann have not and will not be part of any Council deliberations on how to resolve this case.

8

Charter change is unconstitutional.  On the one hand, they assert that Councilmember Hartzel should be allowed to intervene because his reelection chances would be *diminished* if the Charter Amendment's retroactivity is struck down.  *See* Motion to Intervene, at 8-9 (stating that if Plaintiffs are successful, "then the chances of any other candidate of being elected will be diminished").  But if Hartzel's interest as a candidate and incumbent councilmember is to see the retroactive term limits maintained, how can Proposed Intervenors later claim that his fellow councilmembers, who are in the exact same position he is in, will be motivated to seek the opposite result?  Respectfully, the argument makes no logical sense.

## II.     Proposed Intervenors Should Be Denied Permissive Intervention

For the same reason that the Sixth Circuit denied permissive intervention under Rule 24(b) in several of the cases decided above, the Court should do so here.  First, Proposed Intervenors' failure to establish a legal interest in the subject matter weighs against granting permissive intervention, as does their failure to show that the City will not adequately represent their interests.  S*ee Coalition to Defend Affirmative Action*, 501 F.3d at 784.

Even more importantly, the substance and tenor of Proposed Intervenors' Complaint and Motion to Intervene raise precisely the concerns articulated in other cases where permissive intervention has been denied.  In *Coalition to Defend Affirmative Action*, both the district and appellate courts worried that "proposed intervenors 'will inhibit, not promote, a prompt resolution" of this matter by seeking to file "more claims, amend pleadings even further, and inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings." *Coalition to Defend Affirmative*

*Action*, 501 F.3d at 784 (quoting district court decision denying permissive intervention). So too in *Northland Family Planning*, the district court denied permissive intervention because intervention would "seriously delay the adjudication and resolution of the matter since other issues would be raised by STTOP" due to its "open[] hostil[ity] to Plaintiffs" and "ideological goals." 487 F.3d at 346.

The situation is identical here. Through their Complaint and Motion for Injunctive Relief, Plaintiffs seek a simple, straightforward and timely resolution in order to allow this year's election to proceed smoothly and fairly. On the other hand, the proposed intervention would inject just the type of confusion and potential complexity to the case the Sixth Circuit feared—delaying resolution just as the campaign and election season approaches. The clearest evidence of this is that Proposed Intervenors went so far as to assert a Section 1983 claim against North College Hill, alleging that the City "has undertaken a course of action to frustrate and infringe upon" Proposed Intervenors' rights, Complaint at 7-8, simply because the City is exploring and engaging in good faith and standard settlement discussions that any responsible litigant would do in this circumstance. This claim, and the tone of Proposed Intervenors' allegations, make clear that the confusing and time-consuming morass of litigation and politics that so concerned the courts in *Coalition to Defend Affirmative Action* and *Northland Family Planning* would surely occur if intervention is permitted as proposed.

### III.    CONCLUSION

For the reasons stated above, this Court should deny Proposed Intervenors' Motion to Intervene and dismiss Intervenors' Complaint.

10

Respectfully submitted,

/s/ David A. Pepper
David A. Pepper  (#0071739)
Trial Attorney for the Plaintiffs
BLANK ROME
Nathaniel R. Jones (#0026866)
Lori Nuckolls (#0069386)
1700 PNC Center
201 East Fifth St.
Cincinnati, OH 45202
Phone:  513.362.8700
Fax:  513.362.8787
dpepper@blankrome.com
jones-n@blankrome.com
Nuckolls@blankrome.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing will be served upon the following via the Court's ECF system on the date of filing:

John Hust
Schroeder, Maundrell, Barbiere & Powers
5300 Socialville-Foster Road
Suite 200
Mason, OH 45040

David Stevenson
Hamilton County Prosecutor's Office
230 E. Ninth Street Suite 4000
Cincinnati, Ohio 45202

Curt C. Hartmann
The Law Firm of Curt C. Hartman
3749 Fox Point Court
Amelia, OH 45102

Christopher P. Finney
Finney, Stagnaro, Saba & Patterson LLP
2623 Erie Ave.
Cincinnati, OH 45208


/s/ David A. Pepper

David Pepper

Attorney for the Plaintiffs