IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KAREN KRUMMEN, *et al.*, | : | Case No. 1:13CV193 |
| | : | |
| Plaintiffs, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING PLAINTIFFS' |
| | : | MOTION FOR TEMPORARY |
| CITY OF NORTH COLLEGE HILL, | : | RESTRAINING ORDER AND |
| OHIO, *et al.*, | : | PRELIMINARY AND PERMANENT |
| | : | INJUNCTION, DENYING THE |
| Defendants. | : | MOTION OF PROPOSED |
| | : | INTERVENORS FOR LEAVE TO |
| | : | INTERVENE, and DIRECTING THAT |
| | : | JUDGMENT BE ENTERED FOR |
| | : | PLAINTIFFS |

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction (Doc. 2) and the Motion of Proposed Intervenors for Leave to Intervene (Doc. 14).  For the reasons that follow, the Court DENIES the Proposed Intervenors' motion, GRANTS Plaintiffs' motion for injunctive relief, and ORDERS such relief as described below.

**I.     BACKGROUND**

This lawsuit concerns the constitutionality of a recently passed Charter Amendment creating term limits for all elected officials in the City of North College Hill, Ohio ("North College Hill").  (*See* Verified Complaint Ex. A, Doc. 1 at 15, Page ID # 15.)  The Plaintiffs in this case include the following individuals:

• Teresa Eilermann, a resident and registered voter of North College Hill who has served as a member of the North College Hill City Council for more than twenty-seven consecutive years and who intends to seek reelection in the November 2013 general

1

election;

- Maureen Mason, a resident and registered voter in North College Hill who has served as a member of the North College Hill City Council for more than twenty-one consecutive years and who intends to seek reelection in the November 2013 general election; and

- Karen Krummen, Al Long, Erna Olafson, and Marcia Weaver, residents and registered voters of North College Hill who have voted for Plaintiffs Mason and Eilermann previously, who intend to vote for them in the November 2013 general election, and who intend to sign, circulate and submit nominating petitions on their behalf and to support their campaigns in other ways, over the course of 2013.

(*See id*. ¶¶ 4–6, Doc. 1 at 3–4, Page ID # 3–4.) The Defendants include North College Hill and the Hamilton County Board of Elections ("Board of Elections").[1]

The Charter Amendment in question, amending Article XIII of the Charter of the City of North College Hill ("the Charter") by adding a new section, Section 13.09, was approved by the voters of North College Hill in November 2012. In addition to setting term limits for future elected officials, Section 13.09 explicitly imposes term limits retroactively on all current and past officials for years they have already served, as follows:

> Upon passage of this Charter Amendment, *holders of elective office in the City of North College Hill (whether past, current or future) may not seek re-election to the same office if they will have already served a cumulative 12 years or more in that same office*. Such individuals would thus be "Term-limited" for that office.
>
> Elective Offices in North College Hill include Mayor, President of City Council,

---

[1] The complaint also names as Defendants the Chair and Members of the Board of Elections in official capacity. Because the official capacity claims against the Chair and Members essentially are claims against the Board of Elections, any references to claims against the "Defendant Board of Elections" includes the official capacity claims.

> City Council Member and any other elective office that would be created in the future.
>
> Term-limited individuals for an elective office may not be appointed to fill out the unexpired term of a person leaving that same office.
>
> *Any past, present or future office holders having time remaining in an unexpired term after already serving a cumulative 12 or more years may complete their terms but not run for the same office again.*
>
> Term-limited individuals may seek election to any of the other types of elective City Government offices as long as they are not Term-limited in those offices as well.
>
> Should time in office become an issue in determining one's "Term-limited" status, that status may be confirmed by using archived City, County or any other public records.

(*Id*. Ex. A, Doc. 1 at 15, Page ID # 15 (emphasis added).)

       Plaintiffs Mason and Eilermann wish to run for reelection to the City Council this fall. However, each has served more than twelve years on the City Council, and therefore are restricted from running for another term under Section 13.09.  Plaintiffs Krummen, Long, Weaver, and Olafson have been prevented from signing, circulating and submitting petitions to the Board of Elections to place Mason and Eilermann on the ballot, because in light of the newly imposed term limits they cannot honestly attest, as is required by the petitions, that Mason and Eilermann are "well qualified."  (*See id*. Ex. B, Doc. 1 at 17–18, Page ID # 17–18.)  If Krummen, Long, Weaver, and Olafson were to falsely attest to Mason's and Eilermann's qualification for the ballot they would risk incurring potential legal penalty for perjury.  (*Id*. ¶ 11, Ex. B, Doc. 1 at 5, 17–18, Page ID # 5, 17–18.)

       As a result, on March 21, 2013, Plaintiffs filed a Verified Complaint asserting claims alleging that Section 13.09 violates their First and Fourteenth Amendment rights under the

United States Constitution and their right not to be subject to retroactive laws under the Ohio Constitution. (Doc. 1.) Contemporaneously with the filing of their complaint, Plaintiffs filed their Motion for Temporary Restraining Order and Preliminary and Permanent Injunction. (Doc. 2.) With that motion, Plaintiffs ask this Court to declare the retroactive application of Defendant North College Hill's new term limits to be a violation of Plaintiffs' rights under the United States and Ohio Constitutions. Plaintiffs also seek a preliminary and permanent injunction enjoining Defendants North College Hill and the Board of Elections from applying the term limits retroactively against Plaintiffs.

The Court held telephonic status conferences in this matter on March 26, March 29, and April 8, 2013. Shortly thereafter, on April 15, 2013, Proposed Intervenors Susan Wietlisbach, Patrick Hartzel, Nicholas Link, and Nicholas Wietlisbach filed their Motion for Leave to Intervene (Doc. 14), the basis of which is discussed in greater detail below. Both the Plaintiffs and Defendant North College Hill filed responses in opposition to that motion. (Docs. 17, 18.)

Meanwhile, on April 17, 2013, Plaintiffs and Defendant Board of Elections filed an Agreed Entry of Dismissal With Prejudice ("Dismissal Agreement"), dismissing claims against the Board of Elections based on the terms of the settlement agreement attached thereto. Pursuant to that agreement, the Board agreed in part to "adhere to and act consistently with any and all additional orders entered by the federal district court in this Action adjudicating the retroactive application of the term limits established in the Amendment." (Doc. 16 at 3, Page ID # 98.)

Finally, on May 22, 2013, remaining Defendant North College Hill filed a response to Plaintiffs' motion for injunctive relief in which Defendant indicated that during the May 6, 2013 North College Hill City Council meeting, the four council members who are not involved as

named parties in this litigation passed a motion by a three to one vote that provided that the City would take no position either for or against the relief sought by the Plaintiffs as to the application of the Charter Amendment. (*See* Doc. 20 at 1–2, Page ID # 122–23.) Accordingly, like the Board of Elections, Defendant North College Hill represents that it "will adhere to and act consistently with, any and all orders entered by this Court in this action adjudicating the retroactive application of the term limits established in the [C]harter [A]mendment." (*Id*. at 2, Page ID # 123.)

## II. ANALYSIS

### A. Proposed Intervenors Motion for Leave to Intervene

Proposed Intervenors Susan Wietlisbach, Patrick Hartzel, Nicholas Link, and Nicholas Wietlisbach seek leave to intervene as plaintiffs to affirm the constitutional validity of the challenged charter provision and the legal obligation of the Board of Elections not to place on the ballot as a candidate for the North College Hill City Council any individual who does not satisfy, *inter alia*, the requirements of the Charter. Hartzel, Link and N. Wietlisbach were the three individuals specifically designated on the face of the initiative petition,[2] pursuant to Ohio Revised Code § 731.34, as the committee to represent the petitioners in support of the challenged Charter Amendment. In addition to supporting the Charter Amendment at issue herein, S. Wietlisbach has declared her intent to run for election to the City Council, and Hartzel, who is

---

[2] Anyone seeking to propose an ordinance or measure for consideration by the electors of a municipal corporation in Ohio may do so by circulating and filing an initiative petition containing "the signatures of not less than ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation." Ohio Rev. Code § 731.28. If the municipal officer charged with reviewing the petition determines that it meets all statutory requirements, the officer must transmit the petition along with a certified copy of the proposed ordinance or other measure to the relevant board of elections for inclusion in the next general election. *Id*.

currently a City Council Member, also has declared his intent to seek reelection this coming November. Both Plaintiffs and Defendant North College Hill oppose the Motion for Leave to Intervene.

The Federal Rules of Civil Procedure provide that, upon timely motion, a movant shall be permitted to intervene as of right when the movant:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). To intervene under Fed. R. Civ. P. 24(a)(2), a proposed intervenor must establish, among other elements, that "the intervenor has a substantial legal interest in the subject matter of the case."[3] *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007).

In this case, neither of the interests the Proposed Intervenors identify are sufficient to justify intervention as of right. Proposed Intervenors' primary argument is that they have a substantial interest in the lawsuit because they comprised the committee that led the 2012 ballot drive. The Sixth Circuit previously has found similar attempts at intervention to be improper. *See id*. at 345 (finding that a ballot committee seeking to intervene in a lawsuit challenging a state law regulating abortion methods lacked a sufficient legal interest to justify intervention where the committee was created for only one specific ballot initiative and the lawsuit did not involve the regulation of the committee's conduct in any respect); *Coalition to Defend*

---

[3] The other three elements a proposed intervenor must establish are: (1) "that the motion to intervene was timely;" (2) that the proposed intervenor's "ability to protect [a substantial legal] interest may be impaired in the absence of intervention;" and (3) "that the parties already before the court may not adequately represent its interest." *Northland Family Planning Clinic*, 487 F.3d at 343.

*Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007) (holding that two organizations involved in leading a ballot initiative resulting in the passage of a Michigan constitutional amendment barring the use of affirmative action in public hiring, contracting, and university admission decisions lacked a substantial legal interest to justify intervention in a lawsuit challenging the validity of the enacted measures where the outcome of the lawsuit would not regulate the organizations' conduct or directly affect organizations' members and where the organizations' interest in the lawsuit amounted only to an ideological interest in the enforcement of the amendment); *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 316–17 (2005) (upholding denial of motion of a committee that circulated referendum petitions opposing rezoning ordinances to intervene in a negotiated settlement concerning the constitutionality of those ordinances on the basis that "any interest [the committee] had in [the] case sufficient to permit intervention ended when the election took place").

Proposed Intervenors seek to distinguish their interests from those of the movants in the above-cited cases by arguing that in this case, the challenged provision of the Charter directly affects the members of the committee designated by state law to support the initiative effort, and the validity of that provision directly impacts the Proposed Intervenors' ability to fully engage in speech (through the casting of their vote) and the ability to associate with others (to support candidates). The Court finds that argument to be unpersuasive. As to the alleged special status of the committee, the Proposed Intervenors have not sufficiently explained and the Court finds no basis to support Proposed Intervenors' argument that their designation under Ohio Revised Code § 731.34 as the committee to represent the petitioners vests the committee with a recognizable legal interest in the enforcement of the challenged provision that extends beyond

the election. Like the organizations seeking to intervene in the cases cited above, the purpose of the committee in this case was to support the proposed ballot initiative. They do not challenge the procedure or validity of the election itself, and any substantial legal interest they had in the election or the proposed Charter Amendment was terminated when the proposed Charter Amendment was placed on the ballot and the election was held. *See Providence Baptist Church*, 425 U.S. at 316 ("Any substantial legal interest held by 'the duly authorized committee for a referendum which circulated the referendum petitions' was terminated when the referendum was held and the results certified."); *Northland Family Planning*, 487 F.3d at 345 (finding that where an organization "was created and continues to exist for the purpose of passing and upholding the Act, its legal interest can be said to be limited to the passage of the Act rather than the state's subsequent implementation and enforcement of it").

Neither the challenged provisions of Section 13.09 nor the relief sought by Plaintiffs have any perceptible effect on the Proposed Intervenors' ability to cast their votes and promote certain candidates in future elections. That there may be fewer candidates barred by the new term limits in the immediate future does not affect Proposed Intervenors' ability to run for office or to support and the vote for the candidates of their choice.

As a secondary argument, Proposed Intervenors contend that disposition of this case will directly impact S. Wietlisbach and Hartzel in their efforts to be elected this coming November to North College Hill's City Council. This Court disagrees. Proposed Intervenors fail to show that any aspect of the relief requested by Plaintiffs will prevent S. Wietlisbach or Hartzel from seeking election. Nor, as explained above, will it prevent their supporters from exercising their freedom of speech and association during the election. Proposed Intervenors argue that if

Eilermann and Mason are permitted to seek re-election, it will affect S. Wietlisbach and Hartzel because the number of votes that any candidate for city council must receive in order to be elected is dependent upon the number of individuals seeking election in that field race. That argument is far too speculative and is based on the unsupported assumption that the number of candidates is currently fixed and no other individuals would choose to run for a city council position if Eilermann and Mason are barred from doing so.

Accordingly, the Court finds that the Proposed Intervenors are not entitled to intervene in this action. Furthermore, for the same reasons discussed above and for additional reasons expressed by Plaintiffs and by Defendant North College Hill in their memoranda opposing intervention, the Court denies permissive intervention under Federal Rule of Civil Procedure 24(b).

**B.     Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction**

As indicated above, Plaintiffs seek both preliminary and permanent injunctive and declaratory relief on the basis that the retroactive application of term limits on North College Hill elected officials violates Plaintiffs' State and Federal Constitutional rights. As an initial matter, the Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4), a justiciable controversy exists, and Plaintiffs have standing to sue. *See Zielasko v. State of Ohio*, 873 F.2d 957, 959 (6th Cir. 1989).[4]

---

[4] In *Zielasko*, a case involving a judicial candidate who challenged Ohio's mandatory retirement age for elected judges, the Sixth Circuit found that found that a case or controversy existed because the petition to place a judge on the ballot required a declaration of qualification for the office — a declaration "made under the threat of criminal penalty for 'election falsification.'" *Zielasko*, 873 F.2d at 959. The court found that because the plaintiff candidate, who was over the retirement age being challenged, "would have filed a declaration of candidacy *but for* the fear of criminal penalty for election falsification, a justiciable controversy exists in

9

Turning next to the substance of Plaintiffs' claims, the Court finds controlling the Ohio Supreme Court's precedent in *Mirlisena v. Hamilton Cty. Bd. of Elections*, 67 Ohio St. 3d 597, 622 N.E.2d 329 (Ohio 1993), in which the court struck down a provision retroactively applying term limits to city council members holding office prior to the effective date of the amendment on the basis that such provision violated the Ohio Constitution. *Mirlisena* involved a challenge by a Cincinnati City Councilman to a charter amendment, approved by voters during the 1991 election, that proposed that the Charter of the City of Cincinnati be amended to provide as follows:

> [N]o person shall hold the office of member of the council for a period longer than four consecutive two year terms of the council unless a period of at least two consecutive two year terms of the council has intervened without such person serving on the council; that the provisions of this amendment shall apply commencing with the nominations for the election for the council term commencing December 1, 1993, *and that consecutive terms of service on the council to which members were elected prior to December 1, 1993 shall be counted in determining eligibility for office under this section*; and to give effect to the above provisions by repealing existing Section 2 of Article IX, and adopting new Sections 2 and 12 of Article IX be approved[.]

*Id.* at 598–99, 622 N.E.2d at 330 (emphasis added in *Mirlisena*). As a result of the amendment, the plaintiff, John Mirlisena, having already served four consecutive two-year terms on the city council, faced ineligibility for candidacy in the 1993 and 1995 election. *Id.* at 597–98, 622 N.E.2d at 330. Therefore, prior to the 1993 election, Merlisina sought a peremptory writ of mandamus directing the Board of Elections to let him file petitions for the 1993 election, to

---

this case." *Id*. *Compare Miyazawa v. City of Cincinnati*, 45 F.3d 126, 127–28 (6th Cir. 1995) (distinguishing *Zielasko*, and finding that the plaintiff did not have standing to challenge an amendment imposing term limits on Cincinnati City Council Members where the plaintiff "merely asserted a general complaint that an unidentified candidate that she may want to vote for may not be eligible to run for that office," and where she "demonstrated no close relationship to, or any personal stake in, the claim made").

10

review his petitions, and to place him on the ballot provided he met all of the other qualifications. *Id*. at 598, 622 N.E.2d at 330. Mirlisena argued that the portion of the amendment directing that terms of service accumulated prior to the effective date of the amendment be considered when determining eligibility contravened Section 28, Article II of the Ohio Constitution, the prohibition against the passing of retroactive laws.[5] *Id*. A plurality of the Ohio Supreme Court ultimately determined that the amendment was "meant to have retroactive effect." *Id*. at 600, 622 N.E.2d at 331; *see also Norton v. Richards*, No. 24557, 2009 WL 2383008, at *4 (Ohio Ct. App. Aug. 5, 2009) (discussing *Mirlisena*). Therefore, the Court severed the retroactive portion of the amendment. *Id*. at 600–01, 622 N.E.2d at 332.

Faced with a challenge to newly enacted term limits strikingly similar to those challenged in *Mirlisena*, the Court finds that precedent to be highly persuasive if not entirely dispositive, at least with regard to Plaintiffs' claim that Section 13.09 — particularly the portion of that section directing that years of service accumulated prior to the effective date of the Amendment be taken into consideration in determining eligibility under the new term limits — violates the Ohio Constitution's prohibition against the passing of retroactive laws.

---

[5] Section 28, Article II of the Ohio Constitution provides: "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state." That provision has been found to apply not only to Ohio state statutes, but also to local laws of municipalities within Ohio. *See State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 72 Ohio St. 3d 69, 73, 647 N.E.2d 769, 772 (1995) (noting that the "constitutional prohibition against retroactive laws is equally applicable to charter amendments" imposed upon a municipality); *Norton v. Richards*, No. 24557, 2009 WL 2383008, at *2 (Ohio Ct. App. Aug. 5, 2009) (same).

Furthermore, for the reasons discussed below, because the retroactive enforcement of the term limits set forth in Section 13.09 would violate the Ohio Constitution, such enforcement also would constitute an undue burden on Plaintiffs' First and Fourteenth Amendment rights under the United States Constitution. Under federal law, it is well-settled that "a candidate does not have a fundamental right to appear on the ballot." *Corrigan v. City of Newaygo*, 55 F.3d 1211, 1214 (6th Cir. 1995) (citing *Bullock v. Carter*, 405 U.S. 134, 142–43 (1972)). However, "[t]he impact of candidate eligibility requirements on voters implicates basic constitutional rights" found in the First and Fourteenth Amendments. *Anderson v. Celebrezze*, 460 U.S. 780, 786 n.7 (1983).[6] Recognizing that some ballot restrictions are necessary to advance important regulatory interests, courts impose a balancing test to distinguish between restrictions that serve the State's important regulatory interests and those that impose unconstitutional burdens on voters. *Anderson*, 460 U.S. at 788–89. The Sixth Circuit has described that test as follows:

> A court must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into account "the extent to which those interests make it necessary to burden the [voter's] rights." *Anderson,* 460 U.S. at 789.
>
> . . . In evaluating the severity of the burden, the court also decides how much deference to afford the state's interests. If the regulations burden voting rights incidentally, or impose only "reasonable, nondiscriminatory restrictions," they receive a rational basis review. *See id.* at 788. Under the rational basis review, a court usually will uphold regulations because "the state's important regulatory interests are generally sufficient to justify [them]." *Id.* On the other hand, if a regulation burdens voting rights severely, the regulation is reviewed under the compelling interest standard. [*Burdick v. Takushi,* 504 U.S. 428, 434 (1992)]. Under this standard, a court will uphold the regulation only if it is "narrowly drawn to advance a state interest of compelling importance." *Id.* (citation

---

[6] In such cases, "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." *Bullock*, 405 U.S. at 143.

12

omitted).

*Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 920–21 (6th Cir. 1998)

Plaintiffs recognize that a voter does not have "an absolute right to vote for a candidate of her choice, especially when that candidate or party has not complied with reasonable state regulations." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 588 (6th Cir. 2006) ; *see also Zielasko*, 873 F.2d at 961–62 (upholding mandatory retirement age for judges elected in Ohio on the basis no fundamental rights were threatened and the state had a reasonable justification for the restriction); *Citizens for Legislative Choice*, 144 F.3d 916, 922–24 (6th Cir. 1998) (applying balancing approach in upholding lifetime term limits on state legislators). Nevertheless, because restrictions eliminating candidates from a ballot inevitably result in some incidental burden[7] to the right to vote, however minimal, such restrictions must at the very least be based on a reasonable government interest. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) ("However slight [the] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." (internal quotation marks omitted)).

---

[7] With regard to the severity of the burden in this case, Plaintiffs allege that their First Amendment right to freedom of association has been and continues to be infringed. *See Anderson*, 460 U.S. at 787–88 ("The exclusion of candidates [can] burden[] voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens."); *Kay v. Austin*, 621 F.2d 809, 811 (6th Cir. 1980) ("In addition to implicating the right to cast one's vote effectively, ballot access restrictions also have a correlative effect on the right to associate in order to advance one's beliefs."). Plaintiffs also allege that they will suffer a cognizable injury to their right to vote effectively because the new term limits will prevent them from voting for candidates who represent their political preferences and beliefs, and who to them comprise the most qualified and experienced candidates. *See Libertarian Party of Ohio*, 462 F.3d at 585 ("The right to cast an effective vote 'is of the most fundamental significance under our constitutional structure.'" (quoting *Burdick,* 504 U.S. at 433)).

In this case, even under rational basis review, there simply is no legitimate or rational justification for the burden resulting from retroactive application of the new term limits. Without comment on the interests served by prospective term limits, the Court finds that there can be no legitimate state interest in the portions of Section 13.09 mandating that the new term limits be applied retroactively, given that such provisions violate the Ohio Constitution. *See Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 238 (6th Cir. 2011) (finding that a "local misapplication of state law" cannot be considered a compelling government interest).

### III. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for Temporary Restraining Order and Preliminary and Permanent Injunction (Doc. 2), DENIES the Motion of Proposed Intervenors for Leave to Intervene (Doc. 14), and ORDERS that judgment in this matter be entered for the Plaintiffs. The Court further DECLARES that the retroactive application of term limits set forth in Article XIII, Section 13.09 of the North College Hill Charter violates the Ohio Constitution's prohibition on the retroactive application of laws. *See* Ohio Const. Section 28, Art. II. The Court also DECLARES that the retroactive application of those term limits comprises an unconstitutional ballot restriction violating Plaintiffs' First and Fourteenth Amendment rights. The Court makes no ruling as to the constitutionality of the term limits set forth in Section 13.09 to the extent they apply to years of service accumulated after the passage of the November 2012 Charter Amendment.

Finally, for the reasons stated above and pursuant to Federal Rule of Civil Procedure 65, the Court issues a PRELIMINARY AND PERMANENT INJUNCTION enjoining Defendant

North College Hill from taking any actions to enforce the unconstitutional provisions of the Charter as passed, and from taking any actions to prevent Plaintiffs Teresa Eilermann and Maureen Mason from seeking reelection to the North College Hill City Council in the November 2013 election.  Pursuant to the separate Dismissal Agreement described above, the Hamilton County Board of Elections has agreed to accept the nominating petitions of Plaintiffs Eilermann and Mason and review and process such petitions in a manner consistent with this Order.

  IT IS SO ORDERED.

              S/Susan J. Dlott_____
              Chief Judge Susan J. Dlott
              United States District Court